**FILED**
**CLERK**

3/3/2026 2:48 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID HOSANNAH, | * | Case No. 15-CV-3773(GRB) |
| | * | |
| Plaintiff, | * | Long Island Federal |
| | * | Courthouse |
| | * | 100 Federal Plaza |
| v. | * | Central Islip, NY  11722 |
| | * | |
| OFFICER AMEED SAEED, et al., | * | January 29, 2026 |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ALICE TSIER, ESQ.
                            PAULA KATES, ESQ.
                            White & Case
                            1221 Avenue of the Americas
                            New York, NY  10020

For the Defendants:         HELEN M. BENZIE, ESQ.
                            Law Office of Vincent D.
                             McNamara
                            1045 Oyster Bay Road
                            East Norwich, NY  11732

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

(Proceedings commenced at 10:43 a.m.)

THE CLERK:  Calling case Civil 2015-3773, Hosannah vs. Saeed.  Counsel, please state your appearance for the record.

MR. TSIER:  For the plaintiff, Mr. Hosannah, Alice Tsier, from White and Case.  I have my colleagues, Paula Kates, Margaret Lyman (ph) and Juan (indiscernible) with me.

THE COURT: And your client is not here today, correct, and you consent to proceeding in his absence on his behalf.  Am I right about that?

MR. TSIER:  Yes.

THE COURT:  All right.  Counsel?

MS. BENZIE:  Good morning, Your Honor.  Helen Benzie, from the Law Office of Vincent D. McNamara, for the defendant, Officer Saeed.  And with me is my paralegal, Thomas Fanning.

THE COURT:  Okay. Your client is not here today.

MS. BENZIE:  No, Your Honor, and we consent to proceed.

THE COURT:  Okay. I'm not sure why he's not here, but whatever.  We'll get started.  Tell him he'd better be here for trial.

MS. BENZIE:   He's on his way, Your Honor.

THE COURT:  Okay.  Good.  All right.

So we're here for a pretrial conference.  We have lots

3

of things to work on, but let me get started.

We're going to try one cause of action, which is plaintiff's claims against Saeed under the 14th Amendment for sexual abuse based on an alleged August 12th, 2015 contact with plaintiff.  I have that about right, yes?

MS. BENZIE:  Yes, Your Honor.

MR. TSIER:  No, Your Honor.  There is also the second cause of action in the amended complaint.  That's the First Amendment retaliation claim.

THE COURT:  That's interesting.

MR. TSIER:  It's not in the joint pretrial order because we amended --

THE COURT:  Yeah, that's why we call it an order. It's supposed to be in there.  So what -- what do you mean?

MR. TSIER:  Your Honor, we filed a joint pretrial order last summer. And then we had that hearing with you in October where we realized, you know, you were amenable to leave to amend the complaint to add the retaliation claim.

So we filed the amended complaint and we have not filed an amended joint pretrial order. If you'd like us to, we are happy to, but --

THE COURT:  As long as we're on the same page. We're doing the sexual abuse claim and retaliation claim.

MR. TSIER:  Yes, Your Honor.

THE COURT:  Everybody's prepared for that.

4

MS. BENZIE:  Yes.  I thought you were you going to say that secondly, Your Honor.

THE COURT:  Excellent.  No, we're good.

I'm going to fix it using ball point technology. So there I have a note to myself.

Okay.  Now, we've narrowed it down to those two claims and I now remember the issue with the second claim, which is relatively narrow.

What is the plaintiff's estimate on the length of your case?  How many trial days will you need to present your case?

MR. TSIER:  Assuming the witnesses can go one after another, Mr. Hosannah and Mr. Hayes --

THE COURT:  They most certainly will.  Go ahead.

MS. TSIER:  Well, we understand there may be a Singh Singh issue with timing.

THE COURT:  One of the witnesses, one of the important witnesses, has to testify at specific times because he's in prison.

Whenever he's available we will stop whatever we're doing and pick up with that witness.  Once we have a witness -- a jury -- you can waste my time, not too much.

But once we have a jury in that box we will waste no time. I want counsel to be clear.  One after the other. Call your next witness, call your next witness.  When you

5

don't have a witness available, your case is done.

So if we have a special situation like that, we will interrupt whatever we're doing, present that witness, and then go back to whatever we were doing.  Clear enough?

MS. TSIER:  Yes.

THE COURT:  Okay.  So --

MS. TSIER:  I think a day and a half for our case.

THE COURT:  Okay.  Counsel, what do you say about your case?

MS. BENZIE:  Your Honor, I think if everything works, we could probably do it in a half a day.

But having said that and knowing what life is like, I think a day and a half for us as well.

THE COURT:  Okay.  So how about this? I'm going to impose what we call a chess clock system. I'm going to keep you on a time so we keep things moving along and I think that in light of what was just represented to me, I think ten hours per side will more than do it.  Ten trial hours, yes?

MS. TSIER:  That works.

MS. BENZIE:  Yes, Your Honor.

THE COURT:  And my clerks will keep that time and monitor and what not.  And in my past experience, that makes me the least important person in the room, because you only care about them and the time, which I understand.  That's okay.  All right.  Good.

6

So unless you have something else, my intention is to move on to the motions in limine.

MS. TSIER:  Your Honor, one procedural issue that's related to that, we just wanted to raise that we've been having some difficulty with Singh Singh.  We sent their order to you from December six weeks ago about producing Mr. Hosannah on Monday. They've never confirmed to us in writing or on the phone that they plan to do so.

We've chased significantly.  Relatedly, we've had trouble setting up legal visits, including tomorrow.  They've told us we're not allowed to have one.  We are considering asking for an emergency order to bring with us, if you'd be amenable to that.  But we just wanted to put that on the record.

THE COURT:  You mean an order directing them to let you speak to him.

MS. TSIER:  Yes.

THE COURT:  I assume you have no objection.

MS. BENZIE:   I'm not involved. I don't represent Singh Singh, Your Honor.

THE COURT:  That's why I assumed you had no objection.

MS. BENZIE:   Right.

THE COURT:  Anyway, I let everybody be heard.  It's due process.  Okay, sure.  If you want to draft something up

7

--

MS. TSIER:  We might give them like, another hour or two, but if not then (indiscernible) this afternoon.

THE COURT:  And then we could probably certify it with fancy stamps and ribbons to make it look official.

MS. TSIER:  Anything that works, we'll take it.

THE COURT:  The bigger question though is he going to be here?

MS. TSIER:  That's our concern.  I mean, we've spoken, I think, with multiple people at Singh Singh, including the warden's assistant, and they just won't confirm it.  We've been chasing.  We know they received the order. We sent it via certified mail.  We emailed it.

THE COURT:  I'm going to make one last suggestion to you.

MS. TSIER: Sure.

THE COURT:  It's only a suggestion.  To the extent that Singh Singh has an office of legal counsel or corp counsel has a group that's responsible for that, get in touch with them right away, because they usually appreciate just how badly things can go if a federal court order is ignored. It's not a good thing.  And the lawyers tend to appreciate that more.  So that would be my recommendation.

MS. TSIER:  Thank you very much, Your Honor.  And we're doing everything we can to get clarity on that.

8

THE COURT:  Okay.  All right.  Thank you.

MS. BENZIE:   Your Honor --

THE COURT:  Yes.

MS. BENZIE:  -- while we're on the topic of Singh Singh, you've given us a court ordered subpoena for Mr. Hosannah's current medical records, in view of the second cause of action and retaliation, and the claim that there are compensatory damages, which we dispute.

But be that as it may, it was served personally, not only on Singh Singh, but it was also served on the Department of Community of -- the DS.  It was served on the prison authority in Albany.  We have not received any word back from them that they're either going to comply or not comply.  We checked yesterday.  They didn't send the records to the courthouse.

THE COURT:  I don't have them.

MS. BENZIE:  You haven't had anything to do with --

THE COURT:  No, no, I have them at the moment.  If I had them, I'd give them to you.  But let me say this.  In the world of HIPAA, medical records have become increasingly difficult to secure.

MS. BENZIE:  We gave them everything we had --

THE COURT:  Counsel, it's not a criticism.  I'm just saying it's weird.  It's just hard.

MS. BENZIE:  Okay.

9

THE COURT:  But I have a more fundamental question.  Unless I'm misremembering, I thought that the compensatory damages claim would have been -- was emanating from alleged First Amendment violation and, therefore, would have the compensatory damages associated with the First Amendment violation.  Am I right about that?

MS. BENZIE:  That's correct.

MS. TSIER:  Right.

THE COURT:  So would the medical records be relevant at all to that?

MS. BENZIE:  How --

MS. TSIER:  We don't want to tell counsel how to try her case.  But we don't think so.

THE COURT:  No.  Hold on.  Are you claiming physical injury from -- continued physical injury from the violations here?

MS. TSIER:  No, Your Honor.

THE COURT:  So if they don't show up, I don't think it's tragic because I don't think I'd let you --

MS. BENZIE:  If there's no proof of physical injury, Your Honor, and no claim for physical injury, and no claim for an emotional injury, yes.  If the records aren't there, we can work around them.  But I don't want to be in a situation where there's a claim that an emotional injury is compensable, which I --

10

THE COURT:  Well --

MS. BENZIE:   take the --

THE COURT:  -- first of all --

MS. BENZIE:   Sorry.

THE COURT:  -- emotional breaks down into two pieces because it could be -- it probably would be asserted as garden variety and not --

MS. BENZIE:  And then we run into the Prison Litigation Reform Sct where there is a preclusion of damages for emotional injury unless there is a commensurate physical injury --

THE COURT:  Understood.

MS. BENZIE:   -- and if a serious sexual assault, as defined in the statute is involved, that circumstance does not exist.  So we have come up against the bumper of preclusion for emotional damages even under the First Amendment claim, I believe.

THE COURT:  Well, there is -- there's a different bucket when it comes to First Amendment violations, I think. That's not really emotional, but I could be wrong.

What do you -- look.  I allowed a late in the game amendment here.  You have to make it clear what are you seeking?  What proof are you putting in terms of compensatory damages?

MS. TSIER:  Garden variety emotional damages, Your

11

Honor.  The emotional and physiological harm.

THE COURT:  From the sexual assault or from the retaliation because he exercised First Amendment rights?

MS. TSIER:  Both.  Both.

THE COURT:  I could have -- once I formulated that question, I could have formulated the answer for you.  I guess you're going to say both, but I don't know if you can, right?  She has a point about the physical injury piece.

MS. TSIER:  I think it does come from retaliation because the retaliatory action that was taken had an emotional harm pointed to it.

THE COURT:  What evidence are you going to be putting on concerning emotional damages?  Let's do it that way.

MS. TSIER:  We're planning to put on Mr. Hosannah's testimony, the effect on him and corroborated by certain requests for mental health help, but those are already on the exhibit list, Your Honor.  So we were planning to use these additional medical records.

THE COURT:  I have to think about that a little bit.

MS. TSIER:  We'd be happy to provide something recent if that would be helpful.

THE COURT:  Why don't you do that, because I'm not sure what I'm going to allow here.  Counsel might be right.

12

It might be precluded and then are we doing this case for the purposes of no relief?  Like, in other words what -- are there other --

MS. TSIER:  There's punitive damages as well.

THE COURT:  These would be punitive, right.  Right, right, right.

So I was thinking, I guess exemplary was bouncing around my head, but that's really punitive damages.  Okay.

Why don't you figure out exactly what you want to offer?  Like, for example, a request for medical assistance -- if it didn't happen, right? I don't know.  And also, when you say you'd be seeking garden variety.  I don't know that there is any testimony that goes along with garden variety, right?  I don't think that you're allowed to provide evidence of it.

The whole point of it is supposed to be the jury just assumes the ordinary emotional impact of being in whatever the situation is, which I think is a very hard thing to ask him to assume, but that's the law.

MS. TSIER:  I may be misunderstanding this, but my understanding was that you could have a plaintiff testify to his emotional damages and corroborate it with some documentary evidence and that should be sufficient.  But again, we'd be happy to clarify it in some briefing.

THE COURT:  Better look at that because it's going

13

to be a messy and difficult issue.  All right. Good.

Well, I will also sign anything else you want me to sign, but I don't know that you're going to need any of those records.

MS. BENZIE:  Your Honor, if I need something else signed -- I have somebody looking into it this morning.  If I need something signed, I'll send it to you on the ECF system.

THE COURT:  Okay.  And I will say to you what I said to your adversaries.  If you really want to push that subpoena along, you might want to call the --

MS. BENZIE:  I'll get to the legal department.

THE COURT:  -- get to the legal department, yeah, because usually they understand the bad things that could happen, whereas the warden's assistant might not.  All right. Good.

Anything else before we plunge into the motions in limine?

MS. TSIER:  Very quickly, Your Honor.  We just have an electronic order form so that non-attorneys can bring in devices.  Would you prefer that be filed on the docket or handed out to you right now?

THE COURT:  That you can bring in devices into the courthouse --

MS. TSIER:  Are not harmless, yeah (indiscernible).

THE COURT:  You can hand that up if you have it.

14

MS. TSIER:  Yeah, we do.

THE COURT: Okay.

(Pause.)

MS. BENZIE:  Your Honor --

THE COURT:  Yes.

MS. BENZIE:  -- could you also add Mr. Fanning to that electronic order if it would be all right with plaintiff's counsel?

THE COURT:  Sure.  It's my order.

MS. BENZIE:  It's your order.

THE COURT:  Once I cross out proposed, I could draw a picture on it if I want. All right.  Give me the name, please.

MS. BENZIE:  Thomas.

THE COURT:  Okay.

MS. BENZIE:  Fanning, F-A-N-N-I-N-G.

THE COURT:  And they've also added the email address.  That's probably some regulation.  Do you know his email address?

MS. BENZIE:  Info@vdm-law.com.

THE COURT:  @vdn?

MS. BENZIE:  M, as in Mary.

THE COURT:  VDM.

MS. BENZIE:  Vincent, David, Mary, dash law.com

THE COURT:  Okay.  All right.  There's like ten

15

people on here, you know, yes?

MS. TSIER:  We just put everyone, including counsel, on (indiscernible).

THE COURT:  And out of an abundance of caution.

MS. TSIER:   Yeah.

THE COURT:  Okay.

MS. TSIER:  May I approach this to --

THE CLERK:  I just need to scan it.

THE COURT:  She has -- it will be electronically out there.  All right.  Anything else before I proceed with the motions in limine?

MS. TSIER:  No, Your Honor.

THE COURT:  Okay.

MS. BENZIE:  At some point, Your Honor, given the weather forecast, I think it would be incumbent to have a phone number just in case life happens and somebody gets stuck on the way here.  But we can take care of that later.

THE COURT:  I'll be out by dog sled if necessary.

MS. BENZIE:   Wonderful.

THE COURT:  Justice will continue.

MS. BENZIE:  Wonderful.

THE COURT:  Let's go.  I'm actually going to begin with plaintiffs.  That makes more sense.  All right.  Okay.

And some of them interact well --  or interlock.  Okay.

16

So I have your notice.  I'm just going to work from the notice so we can do them in order.

Document 164.  Everybody have that handy?  They have a list of eight motions.  Everyone's good with that?

(Pause.)

Good to go counsel?

MS. BENZIE:  You can go on, Your Honor.

THE COURT:  All right.

MS. BENZIE:  It'll come up.

THE COURT:  I intend to.  All right.

Number one, exclude evidence pertaining to NCC's internal investigation of Mr. Hosannah's grievance against defendant for the August, 2015 sexual assault.

Now, I will say a motion like this in part is easy, which is certainly as to any conclusions reached by the investigators.  Any determinations, even credibility assessments, anything like that, that's the job of the jury, not anybody else.  So I would certainly exclude that evidence as to the conclusions.

Whether or not there's materials in there that might be used for impeachment or cross examination material, I just don't know enough about the material to say.  So is there more to talk about there or are we done if I say conclusions --

MS. BENZIE:  Your Honor, we had a deposition

17

yesterday.  No, sorry.  Tuesday.

And in that deposition, we had the actual witness who did the investigation identify certain documents.  So I -- and then they're just the factual documents, you know, where he was, what statement he made, what his complaint was that was forwarded to Internal Affairs.

So I think for -- I think those things would go in as business records.  They've certainly been identified by the witness who obtained them from Nassau County Correctional Center.

THE COURT:  Okay, let's start with the -- you said him.  You mean Mr. Hosannah or somebody else?

MS. BENZIE:  No, this was Mr. Morris, the investigator.

THE COURT:  No, no.  You said that Mr. Morris testified about where he was, what he said.

MS. BENZIE:  Okay.  Mr. Morris interviewed Mr. Hosannah.

THE COURT:  Okay.

MS. BENZIE:  And there is a document that reflects his notes of that interview that is signed by Mr. Hosannah.

THE COURT:  Okay. And what do you say that is used for?  Is that part of your case in chief?

MS. BENZIE:  I would think it would be part of the impeachment insert for cross examination of Mr. Hosannah.

18

THE COURT:  What do you think?

MS. TSIER:  So, counsel, that particular document is Exhibit B on defendant's exhibit list, and we don't have an objection to that document being used to impeach Mr. Hosannah if he says something that contradicts it.

THE COURT:  Right.  Or refresh his recollection and so forth, right?

MS. TSIER:  That being said, we don't think that that document should be used as a back door to bring in the fact that the county investigated this and found that the sexual assault happened.

So our concern is --

THE COURT:  Well, look.  The conclusion is barred, right?

MS. BENZIE:  Right.  No problem with that.

THE COURT:  What happened with that investigation, that's not going to come in.  So it's like any other witness statement that might have been taken by an insurance investigator, you can use it as appropriate.

It's hard to rule on some of these things in the air, but the easy part of this is no conclusions, right? That's -- I think that's -- so I'll leave it at that.

So I'll grant that to the extent we're talking about conclusions and opinions of the investigators, things of that nature.  Fair enough?

19

MS. TSIER:  Your Honor, there are a few other documents on defendant's exhibit list that are part of the investigation package that we think are clearly inadmissible.

So Exhibit D --  Exhibits D and E are witness statements that Mr. Morris, this investigator, did not take. He testified two days ago he didn't take them.  He wasn't involved in interviewing these witnesses.

THE COURT:  Witness statements from whom?

MS. TSIER:  Inmates who are witnesses who are not going to be testifying in court.

THE COURT:  Well, I can't imagine those coming in for any purpose.

MS. BENZIE:  Fair enough, Your Honor.

THE COURT:  If someone calls one of them, then we have to talk again, I guess.  Good.  Anything else on that -- on that motion?

MS. TSIER:  So on the motion to exclude any mention of the investigation, that sort of overlaps with our request that Mr. Morris not be allowed to come testify to the fact the investigation happened and the content of the investigation.

If the county is no longer a part of the case --

THE COURT:  Are we planning on calling Mr. Morris?

MS. BENZIE:  Your Honor, I wasn't planning on calling him as a witness on the case in chief.

20

THE COURT: Okay.

MS. BENZIE:  He was a document witness for us and he will not come to New York.

THE COURT:  Okay.  He won't be here so there you are.  Okay.  Good.

Preclude defendant from testifying that Mr. Hosannah is targeting him based on defendant's sexual orientation.

That's an odd request in a vacuum, but my recollection and understanding is there's some testimony from the defendant that he might have heard the plaintiff say something about his sexual orientation.  I'm not sure how that's going to play out.

So generally, I think yes is the right answer to that unless there's some competent evidence that there's bias on the part of your client.

MS. TSIER:  Your Honor, the reason we made that request is because in Mr. Saeed's deposition he made the claim that Mr. Hosannah was targeting him based on homophobia and we --

THE COURT:  He can't say that just because he thinks it, right?  If he has some evidence, then I'll rule on the evidence as it comes in.

MS. BENZIE:  Fair enough, Your Honor. If it comes up -- right.

THE COURT:  Good.  All right.  And then number four.  Preclude argument and testimony suggesting that defendant's employment record is free from complaints of sexual assault and the use of force by inmates other than Mr. Hosannah?  I would say yes, except I think elsewhere you're asking me to put in his disciplinary record.  So if his disciplinary record comes in, you've opened the door.

MS. TSIER:  Your Honor, we never asked to put in his disciplinary record.

MS. BENZIE:  But there is a request to use documents from his -- from my client, Mr. Saeed.

THE COURT:  You asked for it.  Okay.

MS. BENZIE:  For Mr. Saeed's prior labor law case against the county, which is like four, five or six years before this thing.

THE COURT:  Yeah.

MS. BENZIE:  And I think it should be precluded.  That's --

THE COURT:  We'll get to that.

MS. BENZIE:  Okay.

THE COURT:  Are you opposing that?

MS. TSIER:  Our opposition is just that there are a few documents we pulled from --

THE COURT:  See, I wasn't wrong.  You want part of the disciplinary record in.

22

MS. TSIER:  It's not a disciplinary record.

THE COURT:   Well, all right.

MS. TSIER:  It's a memo that the defendant wrote that goes to notice.  It's not a disciplinary record at all.

THE COURT:  We'll talk about that in a moment.  But everyone should be careful, right?  Because these rulings are not written in cement.  They're written in sand.

And, you know, you open a door, if things change.  So the answer is yes, the disciplinary -- I don't think it comes in for any purpose, but we'll talk about other aspects of that.  Okay.

Exclude defendant's photograph in Nassau County Correctional Center, or alternately, order the NCC to permit plaintiff to enter and take photographs.

Now, I understand that the photograph was produced late in the process and what not, but I think it's fair to let it in.  If you want to go take pictures in the jail, go take pictures in the jail.

MS. TSIER:  It's not a public place.  We would just request an order allowing --

MS. BENZIE:  Logistically, we've got a problem with that.  But I could make a phone call.

THE COURT:  Okay.  What do you mean?

MS. BENZIE:  It's not a public place.

THE COURT:  I understand, but they have the right

23

to inspect a location.  So between then and when we start the trial, you're going to have to make some accommodation to allow them to go in and take a couple of pictures.

MS. BENZIE:  I will make a phone call, Your Honor.

THE COURT:  Yeah.  I have this device that might help.  Just remind them -- so, yes.  So ordered.  They can go take pictures, unless you don't want -- unless you want to keep your photograph out.  That's the other way to deal with this.

MS. BENZIE:  I will think about it, but I really think --

THE COURT:  Think quick, because we got to make arrangements and orders and so forth.  Okay.  Just think quickly about that and get a resolution soon.

MS. BENZIE:  I'll make a phone call, and  --

THE COURT:  Yeah, I don't know how important the photograph is.  I don't know if it corroborates his --  I don't know whose story it corroborates.  I don't know what it has to do with somebody -- I'm sort of rolling in a vacuum.

But generally speaking, if there's a picture that helps, they would like to take a picture from a different angle because it might change the analysis.  But if it's all for nothing, let's not waste time.

In other words, if you don't need the photograph, let it go and then they don't get any pictures.  Is that a

24

fair accommodation here?  Yeah.  Okay, good.

All right. Exclude evidence from defendants, witnesses, John Morris and Rui DeSousa who were not disclosed in discovery.

So since -- if I were driving home tonight and Mr. Morris and I assume Mr. De Sousa were in the road and I ran over, I get in another car and say, who are those people --  I have no idea what this is about.  So why don't you tell me what this is about and then we can explore it.

MS. TSIER:  Your Honor, it sounds like if Mr. Morris is not coming to testify at all --

THE COURT:  I've already said to him no --

MS. TSIER:  -- that's not a concern.

MS. BENZIE:  That's moot.

THE COURT:  So who's Rui DeSousa?

MS. BENZIE:  Mr. DeSousa is the photographer who takes photographs required to be taken in the Correctional Center for investigations.  I have an affidavit from him on the photographs that he did take.

THE COURT:  All that he would be testifying to is that the place looks like it looks in the photos at the time you took the photos.

MS. BENZIE:   Right.

THE COURT:  Okay.

MS. BENZIE:  And that the structures, the hallways,

25

are the same as they were in 2015 when this alleged incident happened.

THE COURT:  I would suggest when we're done here, you all sit down and talk and see if you really need the photos.  Because if you don't need the photos, then all this goes away.

If you need the photos, you could have agree to the affidavit and put in not or whatever, but this is easy, yeah?

I don't think I would exclude that witness based on the late disclosure and discovery because, you know, somebody took the photo because AI wasn't fully available yet.

I wish you all luck with the world.  I'm leaving you.  I don't know -- understand these things, but anyway -- all right.  Okay.

Now, admit testimony from Mr. John Hayes regarding defendant.  Now, remind me, this is the defendant's sexual assault of Mr. Hayes.  Mr. Hayes is the witness who we're getting from Singh Singh, yes?

Okay.  When I first looked at that, I thought, oh, gosh, that's like 404(b).  And there's the prejudice aspect or whatever.  But of course, there's 415, which has changed the balance on this. It strikes me that Mr. Hayes' testimony would be admissible.  Tell me why it's not.

MS. BENZIE:  It's not because when I took his deposition he has a very, very poor memory.  He gave -- the

26

only corroboration that he has is an affidavit he did in December of 2017, which is over a year after he left the facility in August of 2016.  He never filed a complaint with anybody and he admitted that.

And he also at the time was savvy enough to start a lawsuit against his lawyer for his conviction, which was dismissed.

And apparently his memory problem is due to something that happened to him prior to his admission to the Nassau County Correctional Facility.  And I just think it's torture to put him through testimony.

And I don't -- I just think it is the crudest form of gossip.  I think he's a witness who would want to help somebody out, but not fully appreciate that there are limits on your ability to help somebody out.

This is not the same situation as the recent Second Circuit case, *Carol*.  There is no public admission or private admission of any sort about any alleged conduct on my client. So that's basically my position.

THE COURT:  I agree. I think you brought up several very important and powerful points.  But I think all of the points you raised go to weight, not admissibility, meaning you'll cross examine it.  It will be brutal and painful, and you'll make these arguments to the jury and they'll make the determination in light of the expanded admissibility

27

requisites in 415. I would say even under 404(b) I think this testimony would come in.  But I think 415 puts it over the top.

And so it's going to go to the types of things that 404(b) talks about, you know, absence of mistake and plan and pattern, so forth.  But again, 415 dramatically, dramatically broadens the admissibility.  So I think it comes in.

Counsel, you might be right and you might hush them cross examination.  We'll see.   We'll see.

MS. BENZIE:  I respectfully disagree, but I hear where you're coming from, Your Honor.

THE COURT:  Yeah, but no, I think it's all -- look, they're all good points, but I can't rule as a matter of law that it's -- I mean, you say it's not corroborated.  Good point.  But you know, the law is pretty clear.  It doesn't have to be corroborated.  Sworn testimony is sworn testimony. Is it going to be good sworn testimony?  We don't know. We'll see.  So -- all right.

Admit testimony from Mr. Hosannah regarding defendants other acts of sexual harassment and retaliation against Mr. Hosannah.

I think that's a plain yes, even if not actionable. Even if it's outside the statute of limitations for the same reasons, I think those are admissible.  So I'm going to say, yes, that those are admissible.

28

And again, it's subject to individual objections. I'm trying to give you some general planning things.  Maybe there are aspects of that that are not admissible under a 404(b) or 403 standard or whatever it is.  But I do raise those as we go along.  Okay?

MS. BENZIE:  Okay.

THE COURT:  Okay.  Which brings us to defendant's motion in limine.

MS. TSIER:  Your Honor --

THE COURT:  Yeah.

MS. TSIER:  -- before we move on, I don't believe you ruled on no. 2, exclude evidence relating to the prior convictions, disciplinary records and unrelated litigation of Mr. Hosannah and Mr. Hayes.

THE COURT:  You're correct. Wait.  Oh, yes.  Okay. Let's do this one at a time.

Disciplinary records and unrelated litigation is absolutely excluded.  Prior convictions, I don't think there are any prior convictions that would go to truthfulness or lack thereof under a 609 analysis.  Am I wrong?

MS. BENZIE:  You're wrong -- well, no, you're not wrong.

THE COURT:  I'm wrong every day. I'm married.  You can tell me.  Don't be afraid.

MS. BENZIE:  Okay.  In terms of formal criminal

29

convictions in a courtroom, no.

However, Mr. Hosannah had a disciplinary report against him by a fellow inmate because he fraudulently used his mailing address to send mail out.

Now, when one goes into prison, there are certain rights that the rest of us don't ever think about that the person in prison loses. Confidentiality of phone calls, the ability to have your mail unopened until you get it. Everything's open, going in and out.

They're informed of that in the handbook.  They're informed of that during the process.  This is a disciplinary ticket that he pled guilty to.  And it definitely goes to credibility.

And that's really the only thing that I wanted to use out of that whole series of documents.  But I put the whole series in as a exhibit because that's the source of my information.  They were previously filed in a court action here.

THE COURT:  Yeah, so I hear you.  I'll say this. I've always found it's one of the oddest features. Understand, a lot of our rules of evidence -- if you look at 609 it talks about convictions, and not all convictions go in, right?  Even with the gold standard they'd be -- someone has gone into the trouble of proving it beyond a reasonable doubt and juries found that.

As I always tell my clerks, I say, pay attention to this, right? You can shoot the governor in the face and it doesn't go in. But if you lie on your tax return, it does, which is very strange. But that's what we do with convictions. Anything short of a conviction, you don't even clear the 409 -- the 609 hurdle. So it doesn't --

MS. BENZIE: But, Your Honor, it goes when you have somebody pleading guilty to a disciplinary rule --

THE COURT: Yeah, that's not a guilty plea.

MS. BENZIE: --that involves truthfulness.

THE COURT: But it's not a guilty plea. It's not -- it's just words. It's not a guilty plea. There's no -- you know, it's just --

MS. BENZIE: It's an administrative proceeding.

THE COURT: I'm quite familiar.

MS. BENZIE: Okay.

THE COURT: But that's like saying you yelled a the lie on the top of the courthouse. It doesn't (indiscernible).

MS. BENZIE: But I can at least use it for cross examination for a prior inconsistent statement or for his reputation for credibility.

THE COURT: There may be a little bit of what you said there that's accurate. In other words, if he --

MS. BENZIE: I'll try.

31

THE COURT:  If he said something that was contrary to what you might be able to, but be really careful because 609 is about impeachment, right? It's not about substantive evidence.  So if you get to that point, I would suggest that we have a sidebar before you dive into it.

MS. BENZIE:  Yes, Your Honor.

THE COURT:  Okay.  There we go.  All right.

Now you're good in terms of completing your list, yes?

MS. BENZIE:  Yes.

THE COURT:  Okay.  So let's go to the defense list.

So permitting the introduction of defendant's proposed C, which is a disciplinary report.  Defendant's proposed O, which is a civil case exhibit.  I think this case or something else.  This is --  it's a different case in front of me, actually -- as records of regular business operations of the facilities which certified them.

I think the answer is a plain no on that, with the exception of, again, if -- if it could be used on cross examination, depending on what's said.  Again, I don't know how the testimony is going to play out, but again, I'd be careful around those things.  And I would suggest a sidebar before we plunge into going into it.

MS. BENZIE:  Yes, Your Honor.

THE COURT:  Okay.  Permitting introduction of the

32

certified inmate handbook.  I think that's an absolute no, although I don't know what's -- what about the handbook is relevant here?

MS. BENZIE:  Your Honor, with the retaliation claim, there are instances of Mr. Hosannah receiving disciplinary tickets for not identifying himself.  And that is the sort of rule that the average person is not familiar with.

THE COURT:  But I'm not allowing those instances in anyway.

MS. BENZIE:   Okay.

THE COURT:  So the handbook is definitely out.  It's no, under 401 and 403.

MS. BENZIE:  I would reserve our right, Your Honor, depending upon what the testimony is to use it for cross examination.

THE COURT:  I'm nothing if not flexible.  And you know where I work.  So the answer is you can always bring things back up to me, but I'm trying to give you some general guardrails here.

Okay.  And then permitting the introduction of medical records.  I'm going to say this.  I don't know that I can do this on the fly.

I'll say you have things from (indiscernible), which I'm quite familiar with, confidential disclosure, and

some other things.  Upstate medical records.

I'm just going say it's still subject to connection.  I don't know what they're going to introduce.  I don't know what you're trying to prove.

Do not expect to come in here and dump, you know, some huge medical file and just say, oh, (indiscernible) to the jury.

MS. BENZIE:  Your Honor, I had no intention to dump a medical file.

THE COURT:  It's got to be specific and it's got to be --

MS. BENZIE:  It's got to be a specific page out of the file.

THE COURT:  And it depends on the foundation.  So it's all subject --  I'm not ruling it's in or out.  I just don't know yet.  But let's leave it at that.

And I would say the same is true of the Subsection D, where you're permitting the introduction of proposed Exhibit N, which are highly confidential documents.  Again, it all depends on --

MS. BENZIE:  We're going to try to work that out.

THE COURT:  Good.  It's really good to work that ahead of time so we don't --

MS. TSIER:  Those are the photos, by the way.

THE COURT:  Oh, is that what that one is?

34

MS. TSIER:  Yes.

MS. BENZIE:   That's the photos.

THE COURT:  Ah, got it.  I forgot about that. Okay.  Yes.  So the photos -- talk to each other.  See if you can work this out.

You would like me to take the judicial notice of his disciplinary record.  That stretches the doctrine of judicial notice beyond the breaking point.  So that's no, I'm not going to do that.

I take judicial notice of things like, we had a lot of snow on Sunday.  Yes, I was there.  I saw it.  You know, that's kind of thing. The sky is blue on a clear day.

And the same would be true for F where you're asking me to take judicial notice of my decision and judgment, which I'll say to you is not admissible for anything.  I don't need you waving my opinion around at the jury, because that should have nothing to do with -- they are the finders of fact.  I am not.  So if you did well with me, congratulations, but the day passed.

So, all right.

MS. BENZIE:  G I think, is out, Your Honor, right?

MS. TSIER:  We withdrew those.

THE COURT:  Okay, thank you.  That moves it along. And then H is the -- was this the --

MS. BENZIE:  This is a labor case, Your Honor.

35

THE COURT:  Yeah, I what to say beyond anything else, I don't even know what the context is, the content is but it's too long in time, right?  I mean, it's years and years before.

So whatever it is, I'm going to exclude it under 401 and 403, whether there's impeachment material that could come out of there, you know, of course, inconsistent statement --  I don't know.  But you'll raise that again at the appropriate time.

MS. TSIER:  Your Honor, if I could just be heard on that for a minute.

Docket Exhibit 11 is a memo that Officer Saeed wrote that shows that he's been told multiple times that he's not allowed to retaliate against inmates for writing grievances.

THE COURT:  Yeah.

MS. TSIER:  We think it is relevant to the retaliation claim because it shows notice and it shows his motivation to go outside of the formal system to retaliate against Mr. Hosannah.

THE COURT:  Yeah, it seems -- but it feels like that kind of impeachment where you're using things that aren't even a conviction.  It's just he got yelled at.

MS. TSIER:  Okay.

THE COURT:  Again, if he claims never to have known

36

that he was supposed to not retaliate, then you can cross examine him with it. But we'll see how that goes.

MS. BENZIE:  But it -- you're --

THE COURT:  You kind of won.  If you want to keep going I'll --

MS. BENZIE:  Okay. I'm going to stick where I am.

THE COURT:  Yeah.  Because I sometimes make mistakes.

MS. BENZIE:  Yes.

THE COURT:  Okay.  Good.  There we go.  All right. Good.  And then the disciplinary records of the defendant --

MS. BENZIE:  We're up to I, Your Honor, I think.

THE COURT: Okay.  Sorry, sorry --

MS. BENZIE:  Of we're taking care of I with briefing?

THE COURT:  Wait. I is compensatory damages.  Yes. Yes.

You're going to brief this for me, because I don't -- I don't know the answer on this.  If there's no physical injury, is there a compensatory damage claim?

It might not matter, right, because it might just be -- is there compensatory damage for an injury to a First Amendment right?  That's an interesting question.

MS. TSIER:  We'll provide briefing.

THE COURT:  But yeah.  Yeah.  I'll look forward to

reading -- I'll learn something.  I learn something every day.

So going down to J, yeah.  You're withdrawing that, yes?  We're not going to use the disciplinary records.

MS. TSIER:  Yes, we weren't planning to.

THE COURT:  Good.  Check.  And then preclude the mention of indemnity of the defendant and any references to defendant's indemnification.  What do you say about that?

MS. TSIER:  We weren't planning to do it --

THE COURT:  Do not do it.  Yeah.

MS. TSIER:  Unless Mr. Saeed in the case of punitive damages says he has no ability to pay, which is an exception.

THE COURT:  Yeah.  Are you going to raise that issue, his ability to pay --

MS. BENZIE:  I don't anticipate doing so, Your Honor.

THE COURT:  Just know that if you do, I believe the case law is --

MS. BENZIE:  We open the door --

THE COURT:  -- they can then say, what are you talking about?  Nassau County has a trillion dollar budget and they can certainly afford this.  And then the numbers start --

MS. BENZIE:  I'm a taxpayer, Your Honor.

38

THE COURT:  I got you. But that's actually -- I've done some work on the area.  It's an interesting -- it's a very interesting question.  It's just a very interesting question.  So anyway --  but -  yeah.

Well, let's not mentioned in the indemnity, and if you do -- if you base it on inability to pay, then we've got a problem.  You could open the door to this, I think.  All right.

But as it stands now, the indemnity of the defendant doesn't come up unless it's appropriately responsive.  Good.  That's the end of the defendant's list. What else do we need to talk about before we go to trial?

MS. TSIER:  We have one other evidentiary question.

THE COURT:  Okay.

MS. TSIER:  In the JPTO both parties stipulated to I believe about nine facts.  Weren't sure if you had a preference on how to enter those into evidence.

THE COURT:  You can do that any way you like.  You could read them.  You could use them --

MS. BENZIE:  I didn't quite hear what Ms. --

THE COURT:   Oh, she's saying the stipulated facts. How are we going to let the jury know about those?

MS. BENZIE:  We put a statement of the stipulated facts in front of the exhibit book.

THE COURT:  You could do that.  I mean, you'll have

39

to just excise it out, right?

MS. BENZIE:  Yeah.

MS. TSIER:  Yeah.  We prepared a one-pager where we sort of cut it out with our signatures.  I'm happy to share it with counsel and see if we can --

THE COURT:  Show it to her.  I mean, if you do it that way, you can read it out loud.  Whatever you'd like to do.

MS. TSIER: If we could read it out to the jury.

THE COURT:  Would you like me to read it out?

MS. TSIER:  No, we could do it.  We just don't want to give them homework.

THE COURT:  Sure.  Absolutely. And I will have the instruction that whatever you stipulated to, they have to accept as fact.

MS. TSIER:  Thank you, Your Honor.

THE COURT:  And I encourage you to stipulate to as much as possible, because there's stuff we shouldn't fight about.  You know, the jail is located in -- wherever it's located and so forth.

Good.  Anything else?

MS. TSIER:  We have a few questions if you have a minute.

One is the parties submitted jury instructions.  We do have some issues with defendant's proposed instructions.

40

Is that --

THE COURT:  Okay.  So what I will do -- because I guarantee you I'll have issues with both of your instructions.  I'll reduce it to something I think is reasonable and you'll tell me where I'm wrong.

MS. TSIER:  Okay.

THE COURT: Okay.

MS. TSIER: Your Honor, Mr. Hosannah asked whether it would be possible to exclude from the courtroom his guards from Singh Singh who would be bringing to trial, just because the issue of sexual assault is obviously very difficult one for him because that's --

THE COURT:  Doesn't it sound like the beginning of an escape movie, right?  He'd just like the guards to not be here. I don't know about --

MS. TSIER:  They can be right outside.

THE COURT: No, no.  They're going to be in the courtroom.  I have an incarcerated individual.  They have -- there has to be -- I mean -- but they should.

Well, look, no one here controls them other than me, I guess.  I will not allow them to be handcuffed in the courtroom, right?  In other words, they'll take it off before.  But they're going to sit right behind him, okay?  So that's -- you know, I can't do it any other way.  All right.

41

Do we know if they're going to send uniformed guards?

MS. TSIER:  I beg your pardon?

THE COURT:  Are they going to send uniformed officers?

MS. TSIER:  We don't know.

THE COURT:  I don't love that, but there's only so much I can do.  You know, this is an odd time when it comes to these sorts of things.  But you had something else?

MS. TSIER:  Yeah, just a few logistical things like we were wondering what your process was for picking the jury?

THE COURT:  Okay.  Good question.  So I will be doing the questioning.  Did you all give me questions?

MS. BENZIE:  Yes, Your Honor, we did.

THE COURT:  Okay.  I didn't pop open that part of the file yet because I was focused on this.

I will reduce your questions to something -- an integrated script.  I will ask the questions to the jury.  I don't allow you to talk to the jurors at the beginning.

At the end, though, before we finish, I will give you an opportunity to say, Judge, we need to follow up generally with a general question, or candidate no. 19, you know, we wanted you to explore the fact, what do you mean she worked as a paralegal?  Where or whatever it is, whatever comes up, we'll deal with it.

42

I tend to pick a jury pretty quickly because I actually have done this a while.  Just know that once we're done, we start the trial.

So we're not going to come back another day.  We're not going to come back in the afternoon. But whenever they're ready, we're going to get them started because I really don't like to waste the time of the citizens who are kind and decent enough to do their civic duty and show up and serve. So I'll try to be as respectful of their time as possible. Okay?

What else?

MS. TSIER:  That's it for us.

THE COURT:  Counsel, anything further for you today?

MS. BENZIE:  Nothing further, except, Your Honor, I I did  mention the snow number, just in case.

THE COURT:  Okay, so wait.  When you say that you want a number that you can call.

MS. BENZIE:  Yes.  Your clerk's number or something like that.

THE COURT:  If they get stuck somewhere, what should they do?  Is it -- email is or better or what do you want?

THE CLERK:  They can call.  That's fine.

THE COURT:  And then what number should they be

43

using?

THE CLERK:  They can call my number.  I'll give them my number.

THE COURT:  She'll give you her -- Karen will give you her number.  Karen takes care of everything.

MS. BENZIE:  Wonderful.  Thank you.

THE COURT:  I've got one of the best deputy clerks in the world, so you're lucky to have her.  Anything else?

MS. BENZIE:  Not at this time, Your Honor.

THE COURT:  Counsel, good job today.  I look forward to seeing you all and we'll get started.  It'll be an interesting trial.  So thank you.

MS. BENZIE:  Thank you.

THE COURT:  All right.  Thank you.

(Proceedings concluded at 11:33 a.m.)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

March 1, 2026

Christine Fiore, CERT